**UNITED STATES of America,**

v.

**Charles WYCHE, Defendant.**

**No. CR–03–408.**

United States District Court,
E.D. New York.

March 2, 2004.

Tracey L. Gaffey, Federal Defender Division–LAS, Central Islip, NY, for Defendant.

Lara Treinis Gatz, United States Attorney's Office, Central Islip, NY, for Plaintiff.

### MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Charles Wyche moves pursuant to Rules 12 and 41 of the Federal Rules of Criminal Procedure, and the Fourth, Fifth and Sixth Amendments of the United States Constitution, to suppress the physical evidence offered against him, his identification by a witness at the scene of the alleged crime, and also the written statement elicited from him by the police subsequent to his arrest. For the following reasons, Wyche's motions are **DENIED**.

#### Background

A. *Factual background*

Nassau County police officers arrested Wyche in the early morning hours of November 29, 2002 at the Courtesy Motel in Hempstead, New York. According to the police, an unnamed witness approached one of the policemen, Sergeant Donald Kunst, who responded to a report of a minor automobile accident in the motel's parking lot. The witness stated to Sergeant Kunst that a man involved in the accident earlier tried to sell him a silver-colored .380 caliber semiautomatic pistol in the hallway of the motel. *See* the Government's Memorandum in Opposition to Wyche's Motions to Suppress at 3–4; Wyche's Post-hearing Memorandum of Law in Support of his Motions to Suppress at 1–2.

The witness described a black male wearing a yellow jacket and a "bell hat." The witness recounted that after the un-

successful attempt to sell him a handgun, the man returned to a third-floor room of the motel. Authorities subsequently learned that Room 330 had been registered to Wyche. *See* the Government's Memorandum at 3; Wyche's Memorandum at 1–2.

Meanwhile, a second witness involved in the accident, Francis Combs, was talking with another officer who responded to the scene, Officer John Bailey. While speaking with the officer, Combs unfortunately dropped a receipt for his recent purchase of a nine-millimeter semi-automatic pistol at the feet of Officer Bailey. Informed by the officer that the possession of an unlicensed firearm was a felony in New York State, Combs admitted that he placed a nine-millimeter semi-automatic pistol under a mattress in Room 330 of the motel. *See* the Government's Memorandum at 3; Wyche's Memorandum at 3.

Combs stated that he rented this room along with Wyche, with whom he traveled from West Virginia the day before. Combs stated to Officer Bailey that the police could "go up to the room and get the gun." Combs then gave Officer Bailey a key to the motel room, and consented to a search. *See* the Government's Memorandum at 3; Wyche's Memorandum at 3, 9.

En route to Room 330, the police encountered Wyche, a black man, wearing a yellow jacket and a bell cap, as he emerged from the motel's elevator. The police placed Wyche under arrest. Wearing handcuffs, and standing between a brace of officers in the glare of a police cruiser's turret and search lights, the original, unnamed witness identified Wyche as the man who attempted to sell him a pistol. *See* the Government's Memorandum at 3; Wyche's Memorandum at 3–4, 6.

Contemporaneously, upon entering Room 330, police discovered Wyche's girlfriend, Kelly Garner, and placed her under arrest. An immediate search of the room by Sergeant Kunst and an Officer Douglas produced the nine-millimeter pistol located under the mattress, as described by Combs, and also a box of nine-millimeter ammunition on the floor. *See* the Government's Memorandum at 3; Wyche's Memorandum at 4.

A further search of the room revealed a closed yet un-zipped duffel bag laying on the windowsill. The police searched this bag, and discovered the silver-finished .380 caliber High Standard semi-automatic pistol mentioned by the original witness, a loaded .22 caliber Arcadia revolver, and a 12–gauge Mossberg shotgun. The bag, and its contents, belonged to Wyche. *See* the Government's Memorandum at 3; Wyche's Memorandum at 4–5.

After Wyche's arrest, at the Fifth Precinct's detective squad, Wyche signed a statement in which he admitted, to Detective Joel Mitchell of the Nassau County Police, his ownership of the firearms found in his bag in his motel room. The statement, typewritten by Detective Mitchell, included a waiver of Wyche's rights as provided for in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See* the Government's Memorandum at 4, and at Exhibit A; Wyche's Memorandum at 7–9.

The authorities then learned that Wyche was a felon. On March 11, 2003, a federal warrant issued for his arrest, and on March 14th the Government charged Wyche with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), which forbids felons to possess, receive, ship or transport firearms or ammunition.

## B. *Procedural background*

A grand jury indicted Wyche on this single count on April 10, 2003, and he was arraigned before this Court on April 24th, at which time he entered a plea of not guilty. A suppression hearing was held on

October 27th. Wyche and the Government finished exchanging papers on February 26, 2004. This decision follows.

### C. *Causes of action*

On August 1, 2003 Wyche moved to suppress (i) the weapons found in his bag in his motel room, (ii) his identification by the witness at the motel, and also (iii) his statement to Detective Mitchell, on the bases of FED. RS.CRIM. P. 12 and 41,[1] and U.S. CONST. AMENDS. IV, V and VI.[2]

Wyche claims (1) that Combs lacked the authority to consent to the search of Room 330, that whatever authority Combs may have given he gave involuntarily, and that the police exceeded the scope of any such authority, and that the search therefore violated of the Warrant Clause of the Fourth Amendment; (2), that his identification at the motel is unreliable, as it was conducted in an unduly suggestive manner, in violation of the Due Process Clause of the Fifth Amendment; (3) that the police coerced his incriminating statement from him while he was under the influence of alcohol and drugs, in violation of the Fifth Amendment's safeguards against self-incrimination; and (4) that the police denied his requests for the assistance of an attorney during his custodial interrogation, in violation of the right-to-counsel provisions of the Sixth Amendment.

### Discussion

### A. *The Government's legal burden*

■ On a motion to suppress evidence in a criminal trial, once Wyche establishes

a basis for his motion, the burden rests upon the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers. *See, e.g., United States v. Gotti,* 244 F.Supp.2d 120, 124 (E.D.N.Y.2003); *United States v. Dickerson,* 113 F.Supp.2d 324, 326 (N.D.N.Y. 2000).

### B. *Fourth Amendment claims regarding the physical evidence against Wyche*

Wyche moves to suppress the physical evidence offered against him on the theory that the police lacked his consent to conduct a warrantless search of either his motel room or his bag. Wyche's argument is not sufficient to merit the suppression of the evidence. Even if Combs lacked actual authority to consent to a search of his and Wyche's motel room, Combs had apparent authority to do so. And there is no evidence that Combs was coerced into giving this authority. The police were then justified in conducting the subsequent search of Wyche's bag under the exigent circumstances exception to the warrant requirement. In any case, the bag would have been searched and the weapons within it inventoried as seized property, as Wyche was simultaneously being taken into custody, and the firearms would therefore have inevitably been discovered.

### 1. *Combs' actual authority to consent to a search of Room 330*

Wyche states that "[u]sing a driver's license as identification, a room was ob-

---

**1.** Rules 12 and 41 provide that a motion to suppress may be made before a trial.

**2.** The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized."

The Fifth Amendment provides, in pertinent part, that no person shall be compelled, in any criminal case, to be a witness against himself; and that no person shall be deprived of liberty without due process of law.

The Sixth Amendment provides, in pertinent part, that those accused of a crime shall have the assistance of counsel for their defense.

tained under his name. Mr. Wyche, alone, signed the registration form [for] Room 330," and that Wyche "did not give anyone consent to search Room 330. No one, other than Charles Wyche ... had the authority to consent to a search of Room 330." Wyche's Declaration in Support of His Motion to Suppress Physical Evidence and Statement at ¶¶ 6 and 10; Wyche's Memorandum at 8–10.

> The Government states that Combs
>
> voluntarily gave [Nassau County Police Department] officers the key to Room 330. [Francis Combs] and [Jennifer Combs] had traveled to the Motel with [Wyche] and [Kelly Garner] so that [the Combses] could obtain a[m]otel room. [Combs] paid for the Motel room and obtained the key to Room 330.

Government's Memorandum at 3.

Hotel/motel rooms present unique issues regarding consensual searches. United States District Judge Robert Patterson stated, regarding a search of a hotel room, that

> [I]t is the law in this circuit that one who has authority over common premises sought to be inspected may consent to such a search and his consent is valid as against an absent, non-consenting person who shares authority, as long as the consenting party had a sufficient relationship with the premises, such as mutual use, or joint access or control.

*United States v. Aguirre–Parra*, 763 F.Supp. 1208, 1218–19 (S.D.N.Y.1991) (citing *United States v. Trzaska*, 859 F.2d 1118, 1120 (2nd Cir.1988)).

In the instant case, while Room 330 was registered to Wyche, Combs allegedly paid for the room, possessed a key for the room, and stored his nine-millimeter pistol in the room. These factors indicate that Combs shared "mutual use, or joint access or control" of Room 330 with Wyche, and may therefore have given valid consent for the Room to be searched. Especially pro-

bative is Combs' possession of the room key, as "the Second Circuit has found a key to the premises to be a factor in the analysis of common authority." *United States v. Ramirez*, 115 F.Supp.2d 401, 408 (S.D.N.Y.2000) (relying on *Trzaska*, 859 F.2d at 1120).

### 2. *Combs' apparent authority to consent to a search of Room 330*

▮ Valid consent for a search may be established "where the police reasonably believed that a party had the authority to consent, even if that belief is erroneous." *See O'Rourke v. Huff*, 43 Fed. Appx. 436, 438, 2002 WL 1900417 (2d Cir. 2002) (*relying upon Illinois v. Rodriguez*, 497 U.S. 177, 185–86, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). In this case, Combs' possession of the key to Room 330, as well as his statement to police that he had paid for the room, is enough to have led the police to reasonably believe that the individual could give valid consent for a search of the room. As the Government states in its Memorandum, the "standard to be applied to the officer's conduct is one of reasonableness, and not clairvoyance." *Id.* at 7 (*citing Rodriguez*, 497 U.S. at 185–86, 110 S.Ct. 2793). Combs' possession of the motel room key is enough to meet this lesser standard.

### 3. *The voluntariness of Combs' consent to search Room 330*

▮ Wyche claims that the police coerced Combs into granting them the authority to search Room 330. Wyche argues that Combs and his wife were

> detained by anywhere from five to ten uniformed police officers who, of course, were armed with their service weapons ... [they] were not free to leave ... [they] were told by Officer Bailey that they had committed a crime by possess-

ing a nine-millimeter [hand]gun in New York State.

These circumstances, in Wyche's view, lead to an inference of coercion and the invalidity of any consent he may have given. *See* Wyche's Memorandum at 9–10.

The fact that Combs was surrounded by several armed and uniformed police officers, while probative, is not dispositive regarding the question of whether Combs was coerced. The reality of life in the United States is that encounters between its citizens and the majority of its police personnel will involve civilians being confronted by uniformed men who are visibly under arms. Due to the violence endemic in our society, Americans lack the luxury of a typically unarmed constabulary such as the United Kingdom's.

Yet there is no allegation, despite the fact that Combs was thought by Officer Bailey to be in possession of a pistol, that he or the other officers unholstered their sidearms or shouldered any long guns. And it is the brandishing or display police weapons, and not their mere presence, that most often leads courts to consider whether an individual has been coerced by the authorities into granting consent to a search or making a confession. *See generally United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (Stewart, J.), and its progeny. Also, there is no allegation that Combs was threatened with the use of force if he refused to consent to a search of Room 330.

The fact that Combs was being detained by Officer Bailey, who truthfully informed Combs that he was likely in violation of New York State's "Sullivan law," [3] is similarly probative to, but also not dispositive of, an analysis of whether Combs was coerced. After Officer Bailey saw Combs' receipt for the purchase of a handgun, and ascertained that Combs lacked a valid pistol permit, Officer Bailey reasonably suspected Combs of violating § 265.01. Combs certainly had impetus to cooperate with Officer Bailey at that point. Yet there is no allegation that, for example, Officer Bailey offered to release Combs in return for his consent to search Room 330. To the contrary, the police placed Combs under arrest when they discovered his unlicensed pistol.

There is no doubt that several police officers, armed as in the usual course of their duties, had seized Combs within the meaning of the Fourth Amendment at the time Combs gave Officer Bailey consent to search Room 330—he was clearly not free to go. However, under the totality of the circumstances, on the basis of the record presented, there is no evidence that leads the Court to conclude that the police then coerced Combs into consenting to the search.

4. *Exigent circumstances and the search of Wyche's bag within Room 330*

█ A closer question is that of Sergeant Kunst and Officer Douglas' search of Wyche's bag after they entered Room 330 and discovered Combs' pistol. Combs' authority to consent to the officer's search of the motel room to which he and the Wyche had joint control did not extend to the search of Wyche's bag. However, having discovered one pistol hidden within the room, and with another suspect, Garner, in custody in the room, it was prudent of the police to secure their surroundings and ensure that no one gained access to any other hidden weapons, such as those discovered in Wyche's bag.

---

**3.** N.Y. PENAL § 265.01, Criminal possession of a weapon in the fourth degree, forbids the unlicensed possession of firearms.

While there does not appear to be a case precisely on point within this jurisdiction (*cf. United States v. Orejuela–Guevara,* 659 F.Supp. 882, 889 (E.D.N.Y.1987) (holding that a joint occupant did *not* have the authority to consent to a search, for drugs, in containers found in a closet)), this Court finds that the search of this bag was permissible under the exigent circumstances doctrine, due to the dangers posed to the police by the presence of the firearms.

Police officers face special threats from perpetrators who may possess, or obtain access to, firearms. In 2002, the last year for which complete statistics are available, 51 American law enforcement officers were feloniously killed by assailants bearing firearms. *See Federal Bureau of Investigation Uniform Crime Reports, Law Enforcement Officers Killed and Assaulted* (*available at* **www.fbi.gov/ucr/killed/02leoka.pdf**). Almost one peace officer per week dies at the hands of a gun-wielding suspect somewhere in the United States, and indeed two New York City police detectives were murdered within this jurisdiction in the past year by individuals engaged in illegal firearms trafficking.

Once the police discovered the nine-millimeter pistol secreted within the motel room, a room where one suspect was present, where the officers had reasonable suspicion that at least one other firearm (the .380 pistol) was present but not yet discovered, exigent circumstances existed. These circumstances permitted the police to conduct a warrantless search of Wyche's bag to secure the weapons contained therein and to ensure the safety of themselves and the public.

It is of note is that Combs and Wyche were allegedly caught in the act of illegally trafficking in firearms. Other prospective buyers or sellers of weapons might subsequently have arrived at Room 330, creating an even more dangerous situation.

The police need not have waited for one of the three other firearms hidden in the room to suddenly appear in the hands of a malefactor. The officers were within their authority, under the exigent circumstances doctrine, to search for and exercise preventative, positive control over these weapons.

5. *Inevitable discovery and the search of Wyche's bag within Room 330*

■ Police arrested Wyche when he emerged from the motel's elevator and met the police who were headed to Room 330, on the basis of Wyche's matching the description of the weapons-seller identified by the original witness. Wyche was already lawfully in custody downstairs when Sergeant Kunst and Officer Douglas then discovered Wyche's pistols and shotgun in his bag upstairs.

■ It was inevitable that the police would have discovered Wyche's weapons when they conducted an inventory search of Wyche's possessions. And evidence that is illegally obtained will not be suppressed if the evidence would have been inevitably obtained, usually on the basis of police inventory search procedures. *See United States v. Mendez,* 315 F.3d 132, 137–38 (2d Cir.2002).

Wyche having been taken into custody on the basis of the witness identification, the police would have seized his luggage from his motel room. (It is unlikely that the motel owner would allow Wyche to indefinitely keep his belongings there.) To protect the property of suspects from theft by unscrupulous officers, and to protect the police against false claims of the same, and to ensure that the police do not unknowingly have any dangerous items in their possession—such as, in this case, Wyche's loaded .22 caliber revolver—the police routinely inventory the items they seize. *See, e.g., Illinois v. Lafayette,* 462

U.S. 640, 646–48, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (explaining the rationale of the inevitable discovery doctrine and upholding the constitutionality of an inventory search of a suspect's shoulder bag subsequent to his arrest). Wyche's three weapons would have inevitably, and lawfully, been discovered in his duffel bag when the bag was later inventoried at the Fifth Precinct after Wyche's arrest.

To recapitulate the Fourth Amendment issues, Combs likely had actual authority and certainly had apparent authority to consent to a search of Room 330, and he appears to have given this authority voluntarily; furthermore, the police were justified in searching Wyche's bag under the doctrine of exigent circumstances; finally, the evidence found in Wyche's bag is admissible under the doctrine of inevitable discovery. Wyche's motion to suppress the physical evidence offered against him as having been obtained in violation of the Fourth Amendment is accordingly **DE-NIED.**

## C. *The identification of Wyche*

█ Wyche moves to suppress evidence of the witness identification that the Government offers against him on the theory that the "show-up" identification of him was unreliable because it was conducted in an impermissibly suggestive manner, so much so that the procedures used violated the Due Process Clause of the Fifth Amendment.[4] Specifically, Wyche objects to having been "flanked by uniformed police officers" and "displayed in the beams of Officer Bailey's vehicle's turret and search lights," and to having been "the only civilian in handcuffs." Also, the identifying witness "never gave Sergeant Kunst information as to the gun seller's height, weight, age, distinguishing marks,

hair color or eye color." Wyche's Memorandum at 12–13.

█ A court's determination of whether identification procedures are impermissibly suggestive, and might result in an unreliable identification, requires consideration of the totality of the circumstances. *Piper v. Purtuondo,* 2003 U.S.App. LEXIS 22557 at *23 (2d Cir. Oct. 31, 2003). Factors to consider include

(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. No single factor is dispositive and the question of independent reliability must be assessed in light of "the totality of the circumstances." *Lee v. Keane,* 50 Fed.Appx. 497, 499, 2002 WL 31520115 (2d Cir.2002) (*relying upon Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

█ Using these factors, and applying them in consideration of the totality of the circumstances, the witness' identification of Wyche at the show-up is not unreliable due to the use of unduly suggestive procedures.

The witness had a good opportunity to view Wyche when Wyche allegedly offered to sell him the .380 pistol.

There is no direct evidence as to the witness' degree of attention at the time of his initial sighting of Wyche, but he is alleged to have had a face-to-face conversation with Wyche about buying an illegal weapon, circumstances that imply a high degree of attention.

---

**4.** "Line-ups" display one or more individuals alongside the suspect, individuals who are, ideally, similar in appearance to the suspect, whereas show-ups display the suspect alone, without the benefit of comparison to other individuals.

While, as Wyche argues, the witness did not specify Wyche's height, weight, age, distinguishing marks, hair color or eye color, he did describe Wyche's race and sex, the color of his jacket, and the unique style of Wyche's hat. The witness also described the caliber, color and type of a pistol that corresponded to a weapon later recovered in Wyche's bag. And the witness described the correct floor of the motel, if not the correct room, on which Wyche was staying.

There is no information as to the witness' degree of certainty regarding his identification.

The witness appears to have viewed Wyche very soon—the time period is not specified in either party's papers, but it appears to be a period of at most a few hours—after Wyche's alleged attempted sale of the pistol to the witness.

Four of the five factors enumerated by the Supreme Court in *Neil v. Biggers,* 409 U.S. at 199–200, 93 S.Ct. 375, indicate that this witness' identification is likely reliable enough to be submitted to a jury for their consideration. However, the totality of the circumstances part of the analysis requires the Court to further consider the context in which the identification of Wyche took place.

As Wyche argues, he was surrounded by uniformed officers, bathed in the glow of a police car's emergency lights, and handcuffed at the time of his show-up identification. Each of these circumstances, individually and together, are objectionably suggestive and are to be avoided by the police whenever possible.

The milieu of the show-up in which Wyche was identified provides the sort of suggestive signals to a witness, possibly falsely indicative of the suspect's guilt, that precinct house line-ups are designed to avoid. Line-ups are generally preferred by courts because of the increased reliability of an identification that offers the witness a choice of possible suspects, and without the presence of uniformed officers, search lights and handcuffs guarding, illuminating and restraining a lone suspect. But line-ups take time to arrange properly. Showups, on the other hand, often possess the benefit of taking place as soon as possible after the event the witness observed.

In this case, the benefits of the nearly contemporaneous nature of Wyche's show-up outweigh the disadvantages of the imperfect manner in which the police displayed Wyche to the witness. The witness' alleged earlier encounter with Wyche was likely fresh in his mind. And the fact that Wyche was quite visibly in police custody during the show up, while regrettable, was probably necessary under the circumstances to prevent his flight, and it is in any case not dispositive. *See, e.g., Edwards v. Fischer,* 2002 WL 1225538 at *4–5, 2002 U.S. Dist. LEXIS 10049 at *13–16 (S.D.N.Y. June 5, 2002) (finding, under the totality of the circumstances, that the fact that a suspect was handcuffed during his identification by a witness did not make that identification unreasonably suggestive).

Wyche's motion to suppress the evidence offered against him of his identification by a witness, on the basis of this identification having been conducted in an unduly suggestive manner and in violation of the Due Process Clause of the Fifth Amendment, is **DENIED,** and evidence of the witness' identification of Wyche at the motel may be submitted to a jury pursuant to an in-court identification.

D. *Wyche's statement*

Wyche moves to suppress his incriminating written statement on the theories that (1) his statement was the "fruit of the poisonous tree" due to the warrantless the search of his motel room and his bag, and

the lack of probable cause for his arrest; (2) the statement was given involuntarily as he was under the influence of mind-altering substances and was further coerced by threatening behavior on the part of police detectives, and (3) the statement was elicited after Wyche was denied the assistance of counsel despite his repeated requests for the same.

#### 1. *The Fourth Amendment claim regarding Wyche's statement*

 Wyche argues that his statement should be suppressed as the fruits of two poisonous trees, those of the warrantless search of his motel room and bag, and also of his arrest, which was allegedly illegal as it was made without probable cause. *See generally Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Yet, as discussed *supra*, the Court determines that the warrantless search of Wyche's motel room and bag was legal, and that the evidence obtained therein is admissible. Further, Wyche's arrest, made pursuant to a reliable witness identification, was based upon probable cause, and was therefore not illegal. Wyche's fruits of the poisonous tree argument is unavailing.

#### 2. *Fifth Amendment claims regarding Wyche's statement*

Wyche alleged that his statement to Detective Mitchell was involuntary, as he was drunk, high, and under coercion at the time he made it.

(i) THE INFLUENCE OF ALCOHOL AND DRUGS

Wyche claims that at the time of his interrogation, he was "under the influence of cocaine, alcohol and PCP" (and also "very tired"). Detective Mitchell, who interrogated Wyche, testified at the suppression hearing that, viewed through the prism of his extensive experience in interviewing suspects, Wyche did not appear to be under the influence of alcohol or drugs.

*See* Wyche's Declaration at ¶ 13; Wyche's Memorandum at 7.

 Even assuming that Wyche had taken alcohol or drugs the evening before his morning interrogation, the fact that he may have done so is not dispositive. A statement may still be voluntarily given even when the speaker is intoxicated or under the influence of drugs, as there is no *per se* rule that a confession given under such circumstances is involuntary. *See, e.g. Avincola v. Stinson*, 60 F.Supp.2d 133, 160 (S.D.N.Y.1999). Without further evidence, Wyche's alleged impairment will not suffice to suppress his statement on the grounds that he was so addled as to make that statement involuntarily given and in violation of the Fifth Amendment.

(ii) ALLEGED THREATS TO WYCHE'S PARENTS AND PREGNANT GIRLFRIEND

Wyche claims that police officers told him "to continue answering [pedigree] questions or they would 'drag Mom and Pop out of bed'" to answer the questions for him. Wyche further claims that he "was told that, unless he told [the detectives] that the guns were his, the police would charge his pregnant girlfriend ... with possession of all the weapons." Wyche's Declaration at (Def. Decl. at ¶¶ 14–15.)

 The asking of pedigree questions does not implicate Fifth Amendment concerns. *See United States v. Carmona*, 873 F.2d 569, 574 (2d Cir.1989) (stating that in asking such questions, the "police mean[ ] only to gather ordinary information for administrative purposes"); *see also United States v. Pichardo*, 1992 WL 249964 at *6, 1992 U.S. Dist. LEXIS 14248 at *20 (S.D.N.Y. Sept. 18, 1992) (stating that "pedigree questions ... are not subject to *Miranda* procedures"). Wyche may not have his incriminating statement sup-

pressed on the grounds that the answers to his pedigree questions were coerced.

 Wyche also alleges that detectives threatened to charge Wyche's pregnant girlfriend with weapons possession, presumably under N.Y. PENAL § 265.01 and not 18 U.S.C. § 922(g). This allegation is also unavailing as a ground for suppressing Wyche's confession. A threat to a suspect to charge a third party with a crime, a crime that the third party is also plausibly guilty of, does not make that suspect's subsequent confession inadmissible. While it would have been improper (and unchivalrous) to actually charge the pregnant woman under the circumstances presented, it was not illegal for Detective Mitchell or his colleagues to threaten Wyche with their willingness to do so.

### 3. Sixth Amendment claim regarding Wyche's statement

 Wyche claims to have "asked for an attorney at least fifteen times over the course of [his] interrogation." Detective Mitchell denies that any such exchange took place. See Wyche's Memorandum at 8; Wyche's Declaration at ¶ 14.

Obviously, if Detective Mitchell ignored any such request from Wyche, in violation of Miranda, Wyche's statement should be suppressed. However, the only evidence of this self-serving accusation is the word of Wyche, a convicted felon now facing still further legal jeopardy. After presiding over and considering the testimony offered in the suppression hearing, the Court is entitled to value the sworn statements of a experienced detective, who was subjected to vigorous cross-examination by an able defense counsel, over the assertion of Wyche, and it chooses to do so in this case.

Wyche's motion to suppress the testimonial evidence offered against him, on the bases that his confession was the fruit of the poisonous tree, that the police coerced this statement from him while he was under the influence of alcohol and drugs, and that the police denied his requests for the assistance of an attorney, all in violation of the Fourth, Fifth and Sixth Amendments, are **DENIED**.

### Conclusion

For the foregoing reasons, the Court finds that the Government has shown, by a preponderance of the evidence, that the actions of its officers were lawful. The uniformed police who responded to a report of a traffic accident, and who unexpectedly found themselves in a fluid situation allegedly involving the attempted sale of illegal firearms, acted reasonably in their search of Wyche's motel room and of his bag within that room, and also in the show-up identification of Wyche. Their actions did not violate the Fourth or Fifth Amendments. Neither is there any credible evidence, beyond the word of a felon, that Detective Mitchell in any way violated Wyche's Fifth or Sixth Amendment rights at the Fifth Precinct the following morning.

Wyche's motions to suppress the physical, identification, testimonial evidence against him are therefore **DENIED** on all grounds.

**SO ORDERED.**